UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EVELYN MILLETTE MENAGED,

    Plaintiff,

v.                                                  CASE NO. 3:11-cv-586-J-12JBT

CITY OF JACKSONVILLE BEACH,
FLORIDA, *et al.*,

    Defendants.
_____/

## **REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the Court on Plaintiff's Motion to Reopen the Action ("Motion") (Doc. 40), Plaintiff's Memorandum of Law in Support of the Motion ("Memorandum") (Doc. 44), and Defendants' Response in Opposition thereto ("Response") (Doc. 41). The Motion was referred to the undersigned for a report and recommendation on October 17, 2012. (Doc. 42.) For the reasons set forth herein, it is respectfully **RECOMMENDED** that the Motion be **DENIED**.

**I.    Background**

Plaintiff filed this action against the City of Jacksonville Beach, Florida, and four individual Defendants on June 17, 2011, alleging civil rights violations pursuant

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

to 42 U.S.C. §§ 1983 and 1988, and related state law claims. (Doc. 1.) The Complaint alleges that on June 22, 2007, Plaintiff was pulled over by an officer of the Jacksonville Beach Police Department and was issued a traffic ticket for failure to maintain a single lane. (*Id.* at 3.) Although Plaintiff passed a field sobriety test during that encounter, she was then ordered by a different police officer to do the test again. (*Id.* at 3-4.) When Plaintiff asked if she could leave, she was punched in the face. (*Id.* at 4.) As a result, she fell backward, hit her head on the ground, and temporarily lost consciousness. (*Id.*) At some point, she was also grabbed, shoved, and tasered by various police officers. (*Id.*)

On June 29, 2012, the parties attended a mediation conference, and, with the advice of counsel, Plaintiff entered into a settlement agreement with Defendants. (Docs. 38; 40 at 1; 41 at 2.) In light of the settlement, on July 18, 2012, the Court entered an Order dismissing the case, subject to the right of the parties to move, within sixty days, to reopen the action for good cause. (Doc. 39.)

On September 14, 2012, Plaintiff filed the present Motion, pursuant to Fed. R. Civ. P. 60(b)(6), seeking to set aside the settlement agreement and the Court's July 18, 2012 Order, and to reopen the case so that it could proceed to trial. (Doc. 40.) As good cause for reopening the case, Plaintiff submits her Affidavit and photographs taken following the June 22, 2007 police encounter. (Doc. 40-1.) The Affidavit describes Plaintiff's mental history, mental state at the time of the mediation, and circumstances surrounding the mediation. (*Id.*) It concludes, *inter alia*, that

Plaintiff "did not act voluntarily when [she] signed the mediation settlement." (*Id.* at 4.)

## II.   Discussion

Plaintiff's Motion initially did not include any legal authority, other than a reference to Fed. R. Civ. P. 60(b)(6), in support of the requested relief. (*See* Doc. 40.)  In light of that omission, on November 6, 2012, the Court entered an Order directing Plaintiff to file a memorandum of law in support of the Motion. (Doc. 43.) In the subsequently filed Memorandum, Plaintiff relies entirely on Rule 60(b)(6) in seeking to set aside the settlement agreement, and argues that "in her previously filed affidavit she has set forth facts demonstrating circumstances sufficiently extraordinary to warrant relief under [Rule 60(b)(6)] in that an extreme and unexpected hardship will result if she cannot proceed further with her claim." (Doc. 44 at 3.)

### A.   Standard

#### 1.   "Good Cause" Rather Than Fed. R. Civ. P. 60(b)(6) Standard Applies

Rule 60(b)(6) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any . . . reason that justifies relief."   Fed. R. Civ. P. 60(b)(6).   "[R]elief under this clause is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances."  *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984).

"The party seeking relief has the burden of showing that absent such relief, an 'extreme' and 'unexpected' hardship will result." *Id.* (internal citations omitted).

However, the undersigned disagrees that an analysis of Rule 60(b)(6) is necessary in this instance. The Court's July 18, 2012 Order provided that the dismissal of the case was subject to the right of the parties to move, within sixty days, to reopen the action upon a showing of good cause. (Doc. 39.) Thus, the undersigned will apply the less demanding "good cause" standard. Under that standard, the determinative issue is whether the mediated settlement agreement should be set aside.

### 2. Florida Contract Law

In interpreting settlement agreements, state contract law applies. *Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000) (per curiam)[2]; *see also Shepard v. Fla. Power Corp.*, 2011 WL 1465995, *2 (M.D. Fla. Apr. 18, 2011) ("A settlement agreement is a contract and, as such, its construction and enforcement are generally governed by state law.").[3] "Florida law favors the finality

---

[2] In an ADA case, the *Resnick* court recognized that federal common law is disfavored and applied only in rare instances. 227 F.3d at 1350 n.4. The court stated: "Because this settlement agreement is between two private parties, federal common law does not apply." *Id.* The same is true in this case. Moreover, Plaintiff does not take issue with the application of Florida law or show how the result would be any different under federal common law.

[3] Judge Whittemore's opinion in *Shepard* is instructive as similar issues of alleged duress and incapacity were analyzed and rejected as grounds to set aside a settlement agreement.

of settlements" whenever possible. *Pettinelli v. Danzig*, 722 F.2d 706, 710 (11th Cir. 1984); *see also De Witt v. Miami Transit Co.*, 95 So. 2d 898, 901 (Fla. 1957) (holding that a release could not be invalidated on the ground of mistake and noting "the policy of the law favoring amicable settlement of disputes and the avoidance of litigation").[4]  However, a court may set aside a settlement agreement obtained by fraud, duress, or incapacity of a party. *See, e.g., Shepard*, 2011 WL 1465995, at *2-3. In this case, Plaintiff, by her Affidavit, raises issues of duress and incapacity.

### a. Duress

To set aside the settlement agreement based on duress, Plaintiff "must prove that (1) the settlement agreement was executed involuntarily, and thus not as a choice of free will; and, (2) the other contracting party exerted some improper and coercive conduct over [Plaintiff] to effectuate the settlement." *Id.* at *3 (citations omitted). "[A]bsent claims of fraud or duress, a plaintiff who executes a settlement agreement pursuant to the advice of independent counsel is presumed to have executed the agreement knowingly and voluntarily." *Shepard*, 2011 WL 1465995, at *2 (citing *Myricks v. Federal Reserve Bank of Atlanta*, 480 F.3d 1036, 1041 (11th Cir. 2007)).

"Generally, only improper influence from the other contracting party suffices to set aside a settlement agreement on the basis of fraud, duress or coercion." *Id.*

---

[4] Moreover, civil rights actions are not treated any differently than other civil actions with respect to settlement. *See Evans v. Jeff D.*, 475 U.S. 717, 733 (1986).

However, at least one Florida court has recognized that in "compelling" circumstances involving a mediator's substantial violation of the rules of conduct for mediators, a court has the inherent authority to set aside a mediated settlement agreement. *Vitakis-Valchine v. Valchine*, 793 So. 2d 1094, 1099-1100 (Fla. Dist. Ct. App. 2001). In *Vitakis-Valchine*, the court noted that the conduct of the mediator, if true, would support a finding of misconduct. *Id.* at 1100. The mediator in that case allegedly told a party that she would never win in court, threatened to report to the court that the failure to reach an agreement was that party's fault, and gave the party only five minutes to decide whether to sign the agreement. *Id.* at 1097.

### b.     Incapacity

To set aside the settlement agreement based on a claim of incapacity, Plaintiff "must demonstrate that [she] lacked the mental capacity to enter into a contract at the time of the transaction." *Shepard*, 2011 WL 1465995, at *3; *see also Parks v. Harden*, 130 So. 2d 626, 628 (Fla. Dist. Ct. App. 1961). "A person has sufficient mental capacity to enter into a contract if he or she comprehends the essential elements of the matter to be agreed upon." *Arnold v. Fla. Dep't of Corrections*, 2011 WL 6742499, *3 (N.D. Fla. Oct. 21, 2011). "Mere mental weakness is insufficient to set aside an agreement if the person had sufficient intelligence to understand the nature and effect of the transaction and acted upon [her] own free will." *Shepard*, 2011 WL 1465995, at *3; *Parks*, 130 So. 2d at 628 (citing *Travis v. Travis*, 87 So. 762, 763 (Fla. 1921)).

### B. Analysis[5]

#### 1. Duress

In neither the Motion nor the Memorandum does Plaintiff make any clear claim of duress or improper influence. In the Affidavit, Plaintiff says that given her mental state, the sight of the individual Defendants in the room at the beginning of the mediation caused her to go into "shock mode sitting across from them." (Doc. 40-1, ¶ 13.) She further states that at the mediation, she "shut down completely" and "could not think and could barely talk." (*Id.* at ¶ 16.) However, Plaintiff makes no assertion that Defendants intentionally caused, or even knew about, her distress. She states no facts showing any action taken by Defendants to improperly influence or coerce her into settling. Defendants' mere presence at the mediation clearly does not constitute duress.

Plaintiff also states in the Affidavit that the mediator was "pushy" and was insistent that the settlement agreement was in Plaintiff's best interest. (*Id.* at ¶¶ 14-15.) Plaintiff adds that the mediator said: "Going to court would be humiliating. They would be attacking you the whole time." (*Id.* at ¶ 14.) However, these statements

---

[5] Neither party requested an evidentiary hearing and the undersigned recommends that one is not necessary because there are no material facts in dispute. *See, e.g.*, *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483 (11th Cir. 2007) (holding that a district court has authority to summarily enforce settlement agreement, and decision is reviewed for abuse of discretion). For purposes of this Report and Recommendation, the undersigned accepts the facts contained in Plaintiff's Affidavit as true. Nevertheless, the undersigned is not bound to accept Plaintiff's legal conclusions, such as that she "did not act voluntarily" when she signed the subject agreement. (Doc. 40-1 at 4.)

fall far short of demonstrating that the mediator engaged in any misconduct or exerted any improper influence over Plaintiff. Rather, even accepting Plaintiff's factual allegations as true, the mediator acted within the bounds of his role in facilitating settlement. Thus, this case is distinguishable from *Vitakis-Valchine*. Moreover, there is no evidence that Plaintiff executed the settlement agreement involuntarily.

### 2. Incapacity

In addition to stating that she "went into a shock mode" at the mediation (Doc. 40-1, ¶ 13), Plaintiff also states:

> I was referred to Warren Anderson who took my case for about 3 and half to 4 years. Another young attorney did a lot of work on my case. He is the same age as my son. Mr. Anderson was not present at the mediation for personal reasons though he was on the phone frequently with us during the day. I trusted my attorneys 100%. I simply shut down completely at the mediation. I could not think and could barely talk. I did not act voluntarily when I signed the mediation settlement.

(Doc. 40-1, ¶ 16.)

Plaintiff emphasizes the underlying facts of the case, the resulting physical and mental effects on her, and the circumstances of the mediation, including its length (from 9:00 a.m. to 5:00 p.m.), the absence of lunch or snacks, the presence of the individual Defendants in the room at the start of the mediation, and the insistence of the mediator. (Doc. 40-1.)

The facts in Plaintiff's Affidavit, even if accepted as true, fall well short of showing a lack of mental capacity. Plaintiff asserts no facts indicating that she did

not understand the essential elements of the settlement agreement. At most, these facts show "[m]ere mental weakness," which is insufficient to set aside the agreement. *Shepard*, 2011 WL 1465995, at *3. Moreover, Plaintiff was represented by counsel for the entire duration of the mediation. Even assuming Plaintiff was distressed and now in hindsight questions why she entered into the agreement, such facts are insufficient to warrant setting aside the agreement on the ground of incapacity. *See id.* at *3-4 ("Plaintiff does not allege facts showing that he could not understand the nature and effect of the agreement."). *Cf. Crupi v. Crupi*, 784 So. 2d. 611, 614 (Fla. Dist. Ct. App. 2001) (affirming "the trial court's finding that three Xanax pills, and anxiety and pressure to settle are insufficient . . . to set aside [a mediated settlement agreement]. Otherwise, few, if any, mediated settlement agreements would be enforceable.").

### III. Conclusion

Good cause has not been shown to reopen the action because Plaintiff has failed to present sufficient evidence of duress, incapacity, or any other legal ground to set aside the mediated settlement agreement.

Accordingly, it is respectfully **RECOMMENDED** that:

The Motion (**Doc. 40**) be **DENIED**.

**DONE AND ENTERED** at Jacksonville, Florida, on January 14, 2013.

/s/ Joel B. Toomey
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Howell W. Melton
Senior United States District Judge

Counsel of Record